Shawn R. Obi (SBN: 288088)
WINSTON & STRAWN LLP
333 South Grand Avenue, Suite 3800
Los Angeles, California 90071
Telephone: +1 213-615-1700
Email: SObi@winston.com

Michael B. Kimberly*
WINSTON & STRAWN LLP
1901 L Street NW
Washington, D.C. 20036
Telephone: +1 202-282-5096
Email: MKimberly@winston.com

Kent Z. Steinberg*
WINSTON & STRAWN LLP
300 N. LaSalle Dr.
Chicago, IL 60654
Telephone: +1 312-558-5600
Email: KSteinberg@winston.com

*Attorneys for Plaintiff*
*Pharmaceutical Care Management Association*

**pro hac vice* motion forthcoming

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

PHARMACEUTICAL CARE MANAGEMENT ASSOCIATION,

*Plaintiff*,

v.

ROBERT BONTA, in his official capacity as Attorney General of the State of California, and KIMBERLY KIRCHMEYER, in her official capacity as Director of California Department of Consumer Affairs,

*Defendants*.

**Case No. 2:26-cv-00012**

**COMPLAINT**

**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**

Plaintiff the Pharmaceutical Care Management Association (PCMA) brings this complaint for injunctive relief and a declaratory judgment against Defendants Robert Bonta in his official capacity as Attorney General of the State of California and Kimberly Kirchmeyer in her official capacity as Director of the California Department of Consumer Affairs, and alleges as follows.

## TABLE OF CONTENTS

Introduction .......... 1
Parties .......... 5
Cause of Action, Jurisdiction, and Venue .......... 6
Legal Background .......... 6
ERISA preemption .......... 6
Factual Allegations .......... 9
A. The prescription drug market and PBMs' administrative role. .......... 9
B. SB 41 and its fiduciary-duty mandate to PBMs with respect to self-insured plans .......... 11
C. Section 4441(c)(2) makes an impermissible "reference to" ERISA plans. .......... 11
D. Section 4441(c)(2) has an impermissible "connection with" ERISA plans. .......... 12
E. Section 4441(c)(2) inflicts textbook harm that requires declaratory and injunctive relief. .......... 14
Claims For Relief .......... 15
Count I (ERISA Preemption) .......... 15
Prayer For Relief .......... 16

## INTRODUCTION

1. This case concerns self-insured benefit plans established by employers and multiemployer union trusts for the benefit of most Californians. The design and administration of these plans, including the question of who owes them fiduciary duties, is regulated by the Employee Retirement Income Security Act of 1974 (ERISA). At issue here is a California statute that purports to dictate who qualifies as a fiduciary for ERISA plans under state law.

2. Under ERISA, a "plan sponsor" is generally the employer (if the plan is established by a single employer) or a representative group such as a Taft-Hartley trust (if the plan is established by multiple employers). 29 U.S.C. § 1002(16)(B). Sponsors are the entities who design and institute the benefit plan, and, if no separate plan administrator is identified in the plan, administer it. ERISA requires sponsors that wish to establish a benefit plan to do so pursuant to a written instrument, which must name fiduciaries with authority and control over management of the plan. *Id.* § 1102(a)(1). Identification of fiduciaries is among the most important and basic plan-design decisions.

3. Sponsors often choose to design plans to include prescription-drug coverage. The task of administering prescription-drug benefits is stunningly complex, making the administrative burden prohibitive for nearly all sponsors of prescription-drug benefit plans. Sponsors therefore almost always contract with pharmacy benefit managers (PBMs) to assist with the design and administration of these benefits.

4. Pursuant to these contracts, PBMs generally perform administrative functions only and do not exercise discretionary or other fiduciary powers over plan design, management, or assets. PBMs' functions include assisting sponsors with designing the scope coverage; constructing provider networks on behalf of plans; processing claims at the point of sale; monitoring contracts, claims, and pharmacy networks to identify fraud, waste, and abuse; and various other benefit-administration functions.

5. Under ERISA, fiduciary status entails "discretionary authority or discretionary control respecting management of [a] plan" or "authority or control respecting management or disposition of [plan] assets." *Id.* § 1002(21)(A). Plan sponsors generally do not confer that kind of "discretion" on PBMs, given their limited administrative role. The U.S. Department of Labor (DOL) has recognized that the limited, nondiscretionary functions like the ones that PBMs perform—such as application of rules determining eligibility for participation or benefits, processing of claims, and making recommendations with respect to plan administration—do not give rise to fiduciary obligations. *See* 29 C.F.R. § 2509.75-8.

6. California lawmakers recently passed, and Governor Newsom signed, Senate Bill 41 (SB41), which adds Business and Professions Code § 4441(c)(2) and became effective January 1, 2026. Section 4441(c)(2) purports to impose fiduciary duties on PBMs with respect to ERISA-covered prescription-drug benefit plans. Under its express terms, PBMs doing business in California have "a fiduciary duty to a self-insured employer plan." This provision would effectively amend the carefully defined fiduciary rules established by ERISA and DOL regulations. It also would alter PBMs' clear, contractually defined roles under applicable plan documents. Under the new Section 4441(c)(2), PBMs would be required to evaluate each action and relationship to ensure compliance with state-specific fiduciary duties. In turn, it would open them to endless suits by plaintiffs' lawyers scrutinizing every action after-the-fact, even when those actions comply fully with the PBMs' obligations under ERISA and the relevant plan documents.

7. Going forward, this change in PBMs' role would substantially increase the cost of providing employer-sponsored benefits to Californians. Multistate plan sponsors would have to develop California-specific rules for dealing with PBMs, and PBMs would have to develop administrative processes particular to California. The increased administrative cost and legal liability inevitably would be passed on to employee participants, who will have to pay higher premiums in exchange for less generous benefits.

8. These are precisely the burdens that ERISA's express preemption clause was designed to prevent. *See* 29 U.S.C. § 1144(a). And there is no denying that Section 4441(c)(2) is preempted by ERISA for at least three reasons.

9. *First*, Section 4441(c)(2) makes an impermissible "reference to" ERISA plans by imposing fiduciary duties on PBMs providing services to "a self-insured employer plan." A law impermissibly "refers to" ERISA if it "acts immediately and exclusively upon ERISA plans or [if] the existence of ERISA plans is essential to the law's operation." *Rutledge v. PCMA*, 592 U.S. 80, 88 (2020) (citation omitted). Section 4441(c)(2) meets that description precisely. It singles out "self-insured employer plans"—i.e., ERISA plans—and would be inoperative absent the existence of such plans. By targeting fiduciary

status owed "to a self-insured employer plan," the provision acts immediately and exclusively upon ERISA plans, making preemption straightforward.

10. *Second*, by regulating fiduciary duties owed to ERISA benefit plans, Section 4441(c)(2) regulates in a field already fully occupied by federal standards. ERISA comprehensively governs fiduciaries, dictating *who* is a fiduciary with respect to a plan and under what circumstances those duties may be delegated (29 U.S.C. § 1102, 1105(c)) and *what* is required of a plan fiduciary in protecting beneficiaries and plan assets (*id*. §§ 1104, 1105; 29 C.F.R. Part 2550; 29 C.F.R. § 2509.75-8). This "extensive" regulation means that federal law occupies the field, and fiduciary identities and duties "are central to, and an essential part of, the uniform system of plan administration contemplated by ERISA." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 323 (2016). ERISA's uniform scheme, by which Congress intended to set *nationwide* standards regarding fiduciaries and their obligations, cannot be supplemented by California.

11. *Third*, Section 4441(c)(2) effectively requires plan sponsors to design or structure their plans in a particular way. ERISA dictates the basic elements of a benefit plan's design and administration. Again, selecting who shall be a fiduciary of a benefit plan is the first and most fundamental design decision at the inception of the plan. *See* 29 U.S.C. § 1102(a)(1). To require a plan sponsor to include the plan's PBM among the plan's fiduciaries is therefore to "prohibit[] employers from structuring their employee benefit plans in a [particular] manner"—namely, in a manner that does *not* name a PBM a fiduciary. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). Even if the plan documents decline to name the plan's PBM as a fiduciary, sponsors will have to plan considering that the PBM will be deemed a fiduciary under California state law, subject to California fiduciary standards, and on the hook to exercise discretion in the best interest of the ERISA plan. It therefore is preempted as a regulation of plan design.

12. PCMA seeks a declaration that Business and Professions Code § 4441(c)(2) is preempted by ERISA and an injunction prohibiting Defendants from enforcing that

provision. This relief is necessary to prevent irreparable disruption to ERISA plan design and administration across California, including within this district.

**PARTIES**

13. Plaintiff PCMA is a national trade association organized under Section 501(c)(6) of the Internal Revenue Code and the laws of the State of Delaware. Its principal place of business is the District of Columbia. Its institutional mission is to represent the interests of PBMs before lawmakers and in litigation.

14. PCMA's member companies are PBMs that administer prescription drug benefits for both ERISA and non-ERISA benefit plans covering more than 230 million Americans throughout the nation, including California. They include Abarca Health, CarelonRx, CerpassRx, CVS Health, Express Scripts, Humana Pharmacy Solutions, LucyRx, Maxor Plus, MedImpact Healthcare Systems, OptumRx, PerformRx, Prime Therapeutics, ProAct, Progyny, Rx Benefits, RxSense, Script Care, Serve You Rx, TrueRx, Waltz Health, and WellDyne, among others.

15. PCMA's members regularly contract with, advise, and provide services to self-insured ERISA plans in California, including within the Central District. SB41's amendment to Business and Professions Code § 4441 purports to impose fiduciary duties on PBMs "to a self-insured employer plan," directly impacting PCMA's members' rights and obligations in administering ERISA plans. If SB41 is not enjoined, PCMA members will have to revise their business practices, including how they perform under existing contracts and how they negotiate future contracts.

16. Robert Bonta is the Attorney General of the State of California and is sued in his official capacity. Under California Business and Professions Code §§ 17200 and 17204, he is empowered to seek injunctions on behalf "of the people of the State of California" for "any unlawful . . . business act or practice."

17. Kimberly Kirchmeyer is the Director of the California Department of Consumer Affairs and is sued in her official capacity. The Department of Consumer Affairs is empowered to "[p]romote ethical standards of conduct for business and consumers" (Cal.

Bus. & Prof. Code § 310), and to investigate a "professional fiduciary's alleged violation of statute, regulation, or the Professional Fiduciaries Code of Ethics" and "impose sanctions" upon a finding of breach of a fiduciary duty resulting in harm (*id.* § 6580).

**CAUSE OF ACTION, JURISDICTION, AND VENUE**

18. Plaintiff's cause of action arises under 42 U.S.C. § 1983, the Declaratory Judgment Act (28 U.S.C. §§ 2201-2202), the Supremacy Clause of the U.S. Constitution, and the Court's inherent equitable powers.

19. The Court's jurisdiction is invoked under 28 U.S.C. § 1331. *See Shaw*, 463 U.S. at 96 n.14 ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute . . . presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.").

20. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because defendants reside in the district and 28 U.S.C. § 1391(b)(2) because compliance with the fiduciary duties under Section 4441, if any, will take place in this district. Defendants also have statewide enforcement authority, including within this district.

**LEGAL BACKGROUND**

**ERISA Preemption**

21. The Supremacy Clause of the United States Constitution establishes that federal law takes precedence over state laws. U.S. Const. art. VI, cl. 2. State laws are prohibited from interfering with federal law, including the United States Constitution and federal statutes. A state law that interferes with federal law is preempted. Preemption can be either express or implied. Express preemption occurs when Congress explicitly states its intent to preempt state laws that regulate a given topic.

22. ERISA is a comprehensive federal statute that regulates employee benefit plans. 29 U.S.C. § 1001, *et. seq*. In enacting ERISA, Congress recognized that "[a] patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation," leading to "reduce[d] benefits" for American workers. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987). Efficient administration of a multistate plan "is

impossible . . . if plans are subject to different legal obligations in different states." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148 (2001).

23. To ensure against a patchwork of regulation, Congress included an express preemption provision in the statute. That provision specifies that ERISA and its implementing regulations "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a).

24. With this language, Congress "intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans." *Shaw*, 463 U.S. at 99 (citation omitted). Congress sought to ensure that "the regulation of employee welfare benefit plans" would be "exclusively a federal concern" (*N.Y. State Conference of BCBS Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995)) so that Congress could establish a "uniform regulatory regime over employee benefit plans" (*Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)).

25. The driving concern behind ERISA's purely federal regulatory scheme was that "[r]equiring ERISA administrators to master the relevant laws of 50 States . . . would undermine the congressional goal of minimiz[ing] the administrative and financial burden[s] on plan administrators—burdens ultimately borne by the beneficiaries." *Gobeille*, 577 U.S. at 321 (citations omitted). ERISA's preemption provision is thus intended to "ensur[e] that plans [would] not have to tailor substantive benefits to the particularities of multiple jurisdictions." *Rutledge*, 592 U.S. at 86 (citations omitted).

26. The Supreme Court has construed the words "relate to" in ERISA's pre-emption provision to mean state laws having either a "reference to" or "connection with" ERISA-governed plans. *Gobeille*, 577 U.S. at 319-20.

27. A state law has an impermissible "reference to" ERISA plans when it is targeted exclusively at ERISA plans. The Supreme Court has held preempted a law that "impos[ed] requirements by reference to [ERISA] covered programs," a state law that

"specifically exempted ERISA plans," and a "common-law cause of action premised on the existence of an ERISA plan." *Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324-25 (1997) (citations omitted) (collecting cases). These cases stand generally for the proposition that a state law is preempted if it "acts immediately and exclusively upon ERISA plans" or if "the existence of ERISA plans is essential to the law's operation." *Id.* at 325.

28. There are two general categories of preempted laws under "connection with" preemption. In the first category are state laws that "deal[] with the subject matters covered by ERISA," similar to a field-preemption analysis. *Shaw*, 463 U.S. at 98. Under this form of preemption, laws are preempted if they seek to regulate on topics that are "central to, and an essential part of, the uniform system of plan administration contemplated by ERISA" and DOL's implementing regulations. *Gobeille*, 577 U.S. at 323. This prevents "[s]tates from imposing novel, inconsistent, and burdensome" requirements that interfere "with nationally uniform plan administration." *Id.* Therefore, a state law is preempted when that law intrudes upon "matters [that] are fundamental components of ERISA's regulation of plan administration." *Id.*

29. The second category of preempted laws under the "connection with" prong are those that "bind[] ERISA plan administrators to a particular choice" concerning benefit plan design. *Egelhoff*, 532 U.S. at 147. ERISA "pre-empt[s] [state] laws that require providers to structure benefit plans in [statutorily specified] ways, such as by requiring payment of specific benefits." *Rutledge*, 592 U.S. at 87-88 (citation omitted). Put another way, ERISA preempts state laws that "forc[e] plans to adopt [a] particular scheme of substantive coverage." *Id.* at 88 (citations omitted). A state law that "require[s] providers to structure benefit plans in particular ways" (*id.* at 86-87) or "prohibits employers from structuring their employee benefit plans in a [certain] manner" (*Shaw*, 463 U.S. at 97) is preempted. *See also PCMA v. Mulready*, 78 F.4th 1183, 1198 (10th Cir. 2023) (holding that state law requirements are preempted when a "provision either directs or forbids an element of plan structure or benefit design").

30. ERISA preemption ordinarily displaces state laws only as applied to self-funded plans. That follows from ERISA's so-called Saving Clause and Deemer Clause.

31. Congress did not want ERISA's preemption clause to displace state insurance regulation of private health insurers. *See* Activity Report of the Comm. on Education and Labor, H.R. Rep. No. 94-1785, 94th Cong. 2d Sess., at 48 (1977). Thus, Congress added a Saving Clause specifying that ERISA's preemption provision "shall [not] be construed to exempt or relieve any person from any law of any State which regulates insurance[.]" 29 U.S.C. § 1144(b)(2)(A).

32. But Congress was also concerned that states might "deem" self-funded ERISA plans—larger plans that do not purchase commercial insurance but instead self-insure—to be insurers subject to general state insurance laws under the Saving Clause. Recognizing that this "deeming" gambit would effectively deny ERISA's preemption clause of all application, Congress added the Deemer Clause. That clause provides in relevant part that no self-funded ERISA-covered benefit plan "shall be deemed to be an insurance company or other insurer" for purposes of the Saving Clause. *Id.* § 1144(b)(2)(B). In other words, the Deemer Clause exempts "self-funded ERISA plans from state laws that 'regulate insurance' within the meaning of the saving clause." *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990).

## FACTUAL ALLEGATIONS

### A. The prescription drug market and PBMs' administrative role

33. Most Californians obtain prescription drugs with the help of employer-sponsored or union-sponsored medical plans covered by ERISA. About 2-in-3 employer-sponsored plans and multiemployer plans choose to self-fund their employee benefits, reimbursing covered products and services with their own funds and employee premium contributions, rather than purchasing third-party health insurance for their employees. These are called self-insured benefit plans. *See* Kaiser Family Foundation, *2025 Employer Health Benefits Survey* (Oct. 22, 2025), https://perma.cc/H2VP-Z4SG.

34. When a consumer fills a prescription at the pharmacy counter, the resulting transaction is the product of several pre-existing contractual relationships. First, manufacturers make and bring drugs to market. Then, wholesalers purchase drugs in bulk from the manufacturers and distribute them to pharmacies, doctors, and hospitals. When covered by a prescription-drug benefit plan, consumers have the advantage of negotiated prices with pharmacies and reimbursement of some or all of the remaining drug cost after their out-of-pocket obligation.

35. Designing and administering prescription-drug benefit plans is a complex and time-consuming undertaking that employers and multiemployer union trusts cannot realistically handle on their own. *See PCMA v. District of Columbia*, 613 F.3d 179, 183 (D.C. Cir. 2010). Virtually all sponsors of self-funded plans therefore retain PBMs to provide recommendations on the design of, and to help administer, their prescription-drug benefit plans.

36. As a matter of benefit plan design, the sponsor of an employee prescription-drug benefit plan must determine "what drugs the plan covers (the formulary), how much the plan will pay for those drugs (the cost-sharing terms), and at which pharmacies beneficiaries can have prescriptions filled (the pharmacy network)." *Mulready*, 78 F.4th at 1188. Moreover, a plan must have contracts with hundreds or thousands of network pharmacies, and it must process reimbursement for the hundreds or thousands of prescriptions that plan participants fill every month.

37. Plan sponsors retain PBMs to help them undertake these tasks. "When a beneficiary of a prescription-drug plan goes to a pharmacy to fill a prescription, the pharmacy checks with a PBM to determine that person's coverage and copayment information. After the beneficiary leaves with his or her prescription, the PBM reimburses the pharmacy for the prescription, less the amount of the beneficiary's copayment. The prescription-drug plan, in turn, reimburses the PBM." *Rutledge*, 592 U.S. at 84.

38. PBMs perform a number of administrative functions pursuant to contractual agreements with the plan. These tasks include helping on the front end with recom-

mendations for plan design, including what drugs the plan should cover, how much the plan will pay for drugs, and at which pharmacies beneficiaries can have prescriptions filled. PBMs also help plan sponsors construct pharmacy networks (retail, mail-order, and specialty pharmacy networks), including helping them decide how broad or narrow a network to adopt and whether to use a tiered network.

39. Once the plan is operating, PBMs assist with myriad administrative tasks, including processing claims and appeals, government reporting, monitoring pharmacy compliance, and so forth. In almost every case, the work that PBMs perform is non-discretionary. Concerning plan design, they make only recommendations. Concerning plan administration, they follow the direction of plan fiduciaries.

**B. SB41 and its fiduciary-duty mandate to PBMs with respect to self-insured plans**

40. SB41 was introduced on December 3, 2024, by California Senator Scott Wiener. It was signed into law by Governor Newsom on October 11, 2025, and will take effect on January 1, 2026.

41. SB41 purports to impose state-law fiduciary duties on PBMs serving self-insured plans covered by ERISA. As now amended, Business and Professions Code § 4441(c)(2) states: “A pharmacy benefit manager has a fiduciary duty to a self-insured employer plan that includes a duty to be fair and truthful toward the client, to act in the client’s best interests, to avoid conflicts of interest, and to perform its duties with care, skill, prudence, and diligence.”

**C. Section 4441(c)(2) bears an impermissible “reference to” ERISA plans**

42. By singling out “self-insured employer plan[s]” and imposing plan-facing fiduciary obligations on PBMs in that setting alone, Section 4441(c)(2) makes the kind of express reference to ERISA plans that the Supreme Court has repeatedly held triggers preemption under 29 U.S.C. § 1144(a).

43. A state law is preempted where it "acts immediately and exclusively upon ERISA plans," or "where the existence of ERISA plans is essential to the law's operation." *Dillingham*, 519 U.S. at 325. Section 4441(c)(2) satisfies both formulations.

44. *First*, Section 4441(c)(2) acts "immediately and exclusively upon ERISA plans" because its trigger and target—"a self-insured employer plan"—are ERISA-covered plans. *See FMC Corp.*, 498 U.S. at 61 (explaining that self-funded ERISA plans are governed by ERISA's preemption regime). The provision's text does not apply to services provided to fully insured plans, or other non-ERISA "payers"; it applies only when a PBM provides services to a "self-insured employer plan"—i.e., plans that are covered by ERISA. The statute thus "impos[es] requirements by reference to [ERISA] covered programs," and it is preempted. *Dillingham*, 519 U.S. at 324-25 (collecting cases).

45. *Second*, the "existence of ERISA plans is essential to the law's operation." *Id.* at 325. Section 4441(c)(2) has no operation absent a self-funded plan to which ERISA applies. That is the definition of "reference to" preemption. *See, e.g.*, *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 (1992) (invalidating a statute that "specifically refer[red] to welfare benefit plans regulated by ERISA and on that basis alone [wa]s pre-empted"). By naming "self-insured employer plan[s]" and imposing PBM fiduciary duties with respect to services provided to those ERISA plans, Section 4441(c)(2) makes an impermissible reference to ERISA.

**D. Section 4441(c)(2) has an impermissible "connection with" ERISA plans**

46. Section 4441(c)(2) is preempted also because it has an impermissible "connection with" ERISA plans.

47. *First*, Section 4441(c)(2) intrudes upon a field of regulation that ERISA and its implementing regulations already comprehensively cover: identification of plan fiduciaries, their responsibilities, and any delegation of those responsibilities.

48. ERISA defines fiduciary status by reference to "discretionary authority or discretionary control respecting management" of a plan or its assets. 29 U.S.C. § 1002-(21)(A). Department of Labor guidance confirms that entities performing nondiscretionary

administrative functions—such as processing claims, keeping records, or applying established policies—are *not* ERISA fiduciaries. 29 C.F.R. § 2509.75-8. The Supreme Court has emphasized that state laws are preempted when they encroach upon "central matter[s] of plan administration" because those matters are "central to, and an essential part of, the uniform system of plan administration contemplated by ERISA." *Gobeille*, 577 U.S. at 323 (citation omitted). Section 4441(c)(2) does exactly that by mandating PBM fiduciary duties to self-funded plans and imposing California-specific fiduciary standards. *See PCMA v. District of Columbia*, 613 F.3d at 186-88 (holding that state statute imposing "a fiduciary duty" on PBMs was preempted because it touched upon "a central matter of plan administration" and, thus, had an impermissible "connection with" ERISA).

49. *Second*, Section 4441(c)(2) regulates plan design by dictating who must be treated as a fiduciary to a self-funded ERISA plan. Under ERISA, each plan must be established and maintained pursuant to a written instrument that, among other things, "specif[ies] the basis on which payments are made," "provid[es] a procedure for establishing and carrying out a funding policy," and—most fundamentally—"provid[es] for one or more named fiduciaries" with "authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a), (b). The decision on who will serve as a fiduciary is among the most important and basic plan-design choices. Section 4441(c)(2) overrides that fundamental choice by imposing fiduciary status and duties on PBMs when servicing self-funded plans, irrespective of whether the plan documents name the PBM a fiduciary. State laws are preempted when they "prohibit[] employers from structuring their employee benefit plans in a [particular] manner." *Shaw*, 463 U.S. at 97. And a law is preempted if it "bind[s] plan administrators to any particular choice" concerning plan design. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 659 (1995).

50. In sum, by dictating fiduciary status and duties for PBMs vis-à-vis self-funded plans and by intruding upon the federally occupied field of plan fiduciary governance, Section 4441(c)(2) has an impermissible connection with ERISA plans.

**E. Section 4441(c)(2) inflicts imminent, concrete harms**

51. Absent declaratory and injunctive relief, Section 4441(c)(2) will cause imminent harm to PCMA's members and their ERISA plan clients. The statute purports to transform PBMs' settled, contractual role—from nonfiduciary administrators operating under negotiated service agreements—into fiduciaries subject to California-specific duties, liability, and standards of care. That transformation upends existing contracts, compels costly alterations to business practices, and exposes PBMs to new litigation risks untethered to ERISA's uniform fiduciary framework.

52. The harms are concrete and imminent. PBMs must now adjust compliance, oversight, and documentation protocols to defend against fiduciary-duty claims under state law. They face uncertainty in performance under existing contracts, chilled by the risk that actions taken in accordance with plan instructions and federal regulations could be second-guessed as violating California's fiduciary standards. These compliance, restructuring, and legal-exposure burdens are nonrecoverable and irreparable.

53. Regardless of their permanence, injuries like these cannot be remedied with awards of damages. When a harm arises from illegitimate state regulation, an aggrieved party typically cannot recover these damages by virtue of a state's sovereign immunity. *See Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) (finding irreparable harm where "Tribe's sovereign immunity likely would bar . . . recovering monetary damages"); *cf. Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring) (finding "compliance costs" of "a regulation later held invalid almost *always* produces the irreparable harm" because they are by definition not recoverable).

54. The public interest and balance of equities favor a declaration and permanent injunctive relief in favor of PCMA. ERISA's preemption clause embodies Congress's judgment that uniform federal standards best serve beneficiaries and plan sponsors by minimizing administrative burden and ensuring consistent rights and obligations. Allowing California to superimpose a state-law fiduciary regime on PBM-plan relationships will raise costs, generate conflicting obligations across jurisdictions, and invite litigation that

ultimately redounds to the detriment of plan participants and beneficiaries. Enjoining enforcement of Section 4441(c)(2) will preserve the uniform, nationwide scheme that Congress sought to secure when it passed 29 U.S.C. § 1144(a).

## CLAIMS FOR RELIEF

### Count I

### (ERISA Preemption)

55. PCMA realleges paragraphs 1–54 as if fully set forth herein.

56. Business and Professions Code § 4441(c)(2), as amended by SB41, is preempted by ERISA's express preemption clause, which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a).

57. Business and Professions Code § 4441(c)(2), as amended by SB41, provides that "[a] pharmacy benefit manager has a fiduciary duty to a self-insured employer plan" and prescribes duties including fairness, truthfulness, acting in the client's best interests, avoidance of conflicts, and performance with care, skill, prudence, and diligence.

58. Section 4441(c)(2) is preempted because (1) it makes an impermissible "reference to" ERISA plans by imposing fiduciary duties on PBMs "to a self-insured employer plan" and (2) it has an impermissible "connection with" ERISA plans in that it (a) intrudes upon an area that ERISA comprehensively occupies and (b) prohibits plan sponsors from structuring their employee benefit plans in a particular manner.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and:

a) declare that California Business and Professions Code § 4441(c)(2), as amended by SB41, is preempted by ERISA, 29 U.S.C. § 1144(a), and therefore is invalid and unenforceable;

b) permanently enjoin defendants and their agents from implementing or enforcing California Business and Professions Code § 4441(c)(2), as amended by SB41, in any manner;

c) award PCMA its reasonable attorneys' fees and costs; and

d) grant such other and further relief as the Court deems just and proper.

Dated: January 2, 2026

WINSTON & STRAWN LLP

By: */s/ Shawn R. Obi*

Shawn R. Obi (SBN: 288088)
WINSTON & STRAWN LLP
333 South Grand Avenue, Suite 3800
Los Angeles, California 90071
Telephone: +1 213-615-1700
Email: SObi@winston.com

Michael B. Kimberly*
WINSTON & STRAWN LLP
1901 L Street NW
Washington, D.C. 20036
Telephone: +1 202-282-5096
Email: MKimberly@winston.com

Kent Z. Steinberg*
WINSTON & STRAWN LLP
300 N. LaSalle Dr.
Chicago, IL 60654
Telephone: +1 312-558-5600
Email: KSteinberg@winston.com

*Attorneys for Plaintiff*

**pro hac vice* motion forthcoming