ROB BONTA
Attorney General of California
NELI PALMA
Senior Assistant Attorney General
EMILIO VARANINI (SBN 163952)
Supervising Deputy Attorney General
SOPHIA TONNU (SBN 330189)
Deputy Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
Telephone: (415) 510-4400
Email: Emilio.Varanini@doj.ca.gov
Sophia.TonNu@doj.ca.gov

DANNY LO (SBN 265279)
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6000
Email: Danny.Lo@doj.ca.gov

DARCIE TILLY (SBN 239715)
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
Telephone: (619) 738-9559
E-mail: Darcie.Tilly@doj.ca.gov

*Attorneys for Defendant Rob Bonta, in his official capacity*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHARMACEUTICAL CARE MANAGEMENT ASSOCIATION,<br>Plaintiff,<br>v.<br>ROB BONTA, in his official capacity as Attorney General of the State of California, et al.,<br>Defendant. | 2:26-cv-00012-ODW(MBK)<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Date: May 4, 2026<br>Time: 1:30 p.m.<br>Courtroom: 5D<br>Judge: Otis D. Wright II<br>Action Filed: 1/02/2026 |

## TABLE OF CONTENTS

Page

INTRODUCTION ..... 1
BACKGROUND ..... 2
I. PBMs and California Law Governing PBMs ..... 2
A. PBM Functions and Controversies Regarding PBMs ..... 2
B. California Law Governing PBMs Prior to June 30, 2025 ..... 3
C. Assembly Bill 116 (2025-26), Effective June 30, 2025 ..... 3
D. Senate Bill 41 (2025-26), Effective January 1, 2026 ..... 4
II. The Employee Retirement Income Security Act of 1974 ..... 4
A. ERISA's Scope and General Provisions ..... 4
B. Enforcement of ERISA ..... 5
C. ERISA Preemption ..... 5
D. Recent Federal Development ..... 6
III. Procedural History and the Lawsuit's Allegations ..... 6
LEGAL STANDARDS ..... 7
ARGUMENT ..... 8
I. Dismissal Is Proper Because of Jurisdictional Defects in the Amended Complaint ..... 8
A. PCMA Cannot Establish Injury in Fact Based Solely on Its Members Being Subject to Section 4441(c)(2) ..... 9
B. Reactionary Spending By PCMA Members Does Not Satisfy Article III ..... 11
C. The Existence of Unchallenged Laws Undercuts Article III Standing ..... 13
II. Dismissal Is Proper Because the Amended Complaint Does Not State a Claim for ERISA Preemption ..... 14
A. The Test for ERISA Preemption ..... 15
B. PCMA Did Not Allege Sufficient Facts Supporting Its Allegation Section 4441(c)(2) Has "Reference to" ERISA Plans ..... 15

**TABLE OF CONTENTS**
**(continued)**

**Page**

C. PCMA Did Not Allege Sufficient Facts Supporting Its Allegation Section 4441(c)(2) Has an Improper "Connection with" ERISA Plans ....17

1. PCMA Does Not Allege Relevant Facts That Section 4441(c)(2) Impermissibly Affects Plan Administration ....18

2. PCMA Does Not Credibly Allege Section 4441(c)(2) Dictates Plan Benefits or Plan Beneficiary Status ....20

3. PCMA Cannot Rely on Field Preemption Principles Or a Pre-*Rutledge* Out-of-Circuit Case to Overcome Its Failure to Allege Plan Administration Facts ....20

III. Post-Lawsuit Development by the Federal Government Is Irrelevant to This Lawsuit ....22

CONCLUSION ....22

## TABLE OF AUTHORITIES

Page

**Cases**

*Abraham v. Norcal Waste Sys., Inc.*, 265 F.3d 811 (9th Cir. 2001) .... 18

*Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840 (9th Cir. 2007) .... 8

*Alaska v. Express Scripts, Inc.*, 2024 WL 2321210 (D. Alaska May 22, 2024) .... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .... 8

*Assoc. Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519 (1983) .... 8

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) .... 10

*Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020 (9th Cir. 2021) .... 18, 19

*Bell Atl. v. Twombly*, 550 U.S. 544 (2007) .... 7

*Cal. Hotels & Lodging Ass'n v. City of Oakland*, 393 F. Supp. 3d 817 (N.D. Cal. 2019) .... 16

*Cal. Sea Urchin Comm'n v. Bean*, 883 F.3d 1173 (9th Cir. 2018) .... 9, 11

*California Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc.*, 519 U.S. 316 (1997) .... 5

*Carrico v. City and County of San Francisco*, 656 F.3d 1002, 1007 (9th Cir. 2011) .... 10

*Cent. Sierra Env't Res. Ctr. v. Stanislaus Nat'l Forest*, 30 F.4th 929 (9th Cir. 2022) .... 8

## TABLE OF AUTHORITIES
## (continued)

**Page**

*City & Cnty. of San Francisco v. Whitaker*,
357 F. Supp. 3d 931 (N.D. Cal. 2018) .......... 11, 12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 9, 11, 12

*Crow v. United States*,
2025 WL 2777879 (D. Idaho Sept. 29, 2025) .......... 21

*D.C. v. Greater Washington Bd. of Trade*,
506 U.S. 125 (1992) .......... 4, 16

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) .......... 5, 18

*Diamond Alternative Energy, LLC v. EPA*,
606 U.S. 100 (2025) .......... 9

*Dishman v. UNUM Life Ins. Co. of Am.*,
269 F.3d 974 (9th Cir. 2001) .......... 20

*FMC Corp. v. Holliday*,
498 U.S. 52 (1990) .......... 16

*Get Outdoors II, LLC v. City of San Diego*,
506 F.3d 886 (9th Cir. 2007) .......... 14

*Gobeille v. Liberty Mut. Ins. Co.*,
577 U.S. 312 (2016) .......... 16, 17, 18, 19

*Haaland v. Brackeen*,
599 U.S. 255 (2023) .......... 12

*Int'l Partners for Ethical Care Inc v. Ferguson*,
146 F.4th 841 (9th Cir. 2025) .......... 12

*Jones v. L.A. Cent. Plaza LLC*,
74 F.4th 1053 (9th Cir. 2023) .......... 7

*King Cnty. v. Express Scripts, Inc.*,
2025 WL 1082130 (W.D. Wash. Apr. 10, 2025) .......... 17

## TABLE OF AUTHORITIES
## (continued)


Page

*Lopez v. Candaele*,
630 F.3d 775 (9th Cir. 2010)....................10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................9

*Mehr v. Fed'n Internationale de Football Ass'n*,
115 F. Supp. 3d 1035 (N.D. Cal. 2015)....................12

*Montana Shooting Sports Ass'n v. Holder*,
727 F.3d 975 (9th Cir. 2013)....................11

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995)....................15

*Nat'l Shooting Sports Found., Inc. v. Ferguson*,
722 F. Supp. 3d 1150 (E.D. Wash. 2024)....................11

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001)....................7

*New Hampshire Motor Transp. Ass'n v. Rowe*,
324 F. Supp. 2d 231 (D. Me. 2004)....................8, 21

*Orion Wine Imports, LLC v. Applesmith*,
440 F. Supp. 3d 1139 (E.D. Cal. 2020), *aff'd sub nom. Orion Wine Imports, LLC v. Applesmith*, 837 F. App'x 585 (9th Cir. 2021)....................13

*Paulsen v. CNF Inc.*,
559 F.3d 1061 (9th Cir. 2009)....................5, 21, 22

*PCMA v. District of Columbia*,
613 F.3d 179 (D.C. Cir. 2010)....................20, 21

*PCMA v. Rowe*,
429 F.3d 294 (1st Cir. 2005)....................21

*PCMA v. Wehbi*,
18 F.4th 956 (8th Cir. 2021)....................16, 18, 19

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Rea v. Blue Shield of Cal.*,
226 Cal. App. 4th 1209 (2014)....................3, 16

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
592 U.S. 80 (2020)....................*passim*

*S. California IBEW-NECA Tr. Funds v. Standard Indus. Elec. Co.*,
247 F.3d 920 (9th Cir. 2001)....................16

*Skilstaf, Inc. v. Adminitron, Inc.*,
66 F. Supp. 2d 1210 (M.D. Ala. 1999)....................6

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................7, 8

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)....................13

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)....................10

*Vanness v. Aguilar*,
699 F. Supp. 3d 1076 (D. Nev. 2023)....................11

*Washington v. Dep't of Health & Hum. Servs.*,
482 F. Supp. 3d 1104 (W.D. Wash. 2020)....................13

*X Corp. v. Ellison*,
2025 WL 3459641 (D. Minn. Dec. 2, 2025)....................10

## TABLE OF AUTHORITIES
## (continued)

Page

**Statutes**


29 U.S.C.
§ 1002(14)(B) ....5
§ 1002(21)(A)(i) ....19
§ 1002(21)(A)(iii) ....19
§ 1002(32) ....4
§ 1002(33)(a) ....4
§ 1003(a) ....5
§ 1003(a)(1) ....4
§ 1003(b) ....4, 5
§ 1003(b)(1) ....15
§ 1003(b)(2) ....15
§ 1008(b)(2)(A) ....5
§ 1102(a)(1) ....19
§ 1104 ....4
§ 1106(a)(1) ....4
§ 1106(a)(1)(C) ....5
§ 1132 ....5
§ 1132(a)(1)(B) ....5
§ 1132(a)(2) ....5
§ 1132(a)(3) ....5
§ 1144(a) ....5
§ 1144(b)(2)(A) ....5

California Business & Professions Code
§ 4441(c)(1) ....9, 13, 14
§ 4441(c)(2) ....*passim*
§ 4441(d) ....9, 13, 14
§ 17200 ....6

California Education Code
§ 17566 ....15

California Government Code
§ 22850(d) ....15
§ 25263 ....15
§ 53200(a) ....15
§ 53202 ....15

## TABLE OF AUTHORITIES
## (continued)


**Page**

California Health & Safety Code
§ 1385.0022 ........ 3, 4, 13, 14

California Insurance Code
§ 533.5 ........ 12

**Other Authorities**

Consolidated Appropriations Act, 2026
140 Stat. 173 (Feb. 3, 2026) ........ 6

Improving Transparency Into Pharmacy Benefit Manager Fee Disclosure,
91 Fed. Reg. 4348 (Jan. 30, 2026) ........ 6

Black's Law Dictionary (12th ed. 2024) ........ 6

Federal Rules of Civil Procedure
Rule 12(b)(1) ........ 7
Rule 12(b)(6) ........ 7

## INTRODUCTION

In 2025, California enacted Senate Bill 41 to address longstanding criticisms of pharmacy benefit managers (PBMs). PBMs are health insurance industry middlemen who the Legislature viewed as improperly driving up the price of prescription drugs. Senate Bill 41 seeks to ensure PBMs' activities are driven by patient concerns and provider and payor judgment rather than PBM profits. Among its provisions, Senate Bill 41 mandates that PBMs owe fiduciary duties to self-insured employer plan clients. Cal. Bus. & Prof. Code § 4441(c)(2).

Plaintiff, a PBM trade association, filed suit against California's Attorney General. In this pre-enforcement action, Plaintiff's Amended Complaint asserts Section 4441(c)(2) is preempted by the Employee Retirement Income Security Act of 1974 (ERISA). Plaintiff claims it is improper for a state to impose fiduciary duties on PBMs when PBMs do not owe fiduciary duties under ERISA.

The Court should dismiss the Amended Complaint. Critically, Plaintiff failed to plead facts sufficient to establish it has Article III standing. Plaintiff attempts to satisfy Article III by claiming that being subjected to Section 4441(c)(2) is injurious and its members will have to incur costs to come into compliance with Section 4441(c)(2). The first theory lacks sufficient facts because Plaintiff does not allege its members intend to engage in conduct inconsistent with Section 4441(c)(2). Such allegations are required for this standing theory. The second theory is insufficiently pleaded because the compliance activities identified by Plaintiff are not mandated by Section 4441(c)(2) and a plaintiff cannot manufacture standing.

On top of Plaintiff's jurisdictional problems, the Amended Complaint should be dismissed because Plaintiff failed to plausibly allege Section 4441(c)(2) is preempted by ERISA. The general rule in the Ninth Circuit is that ERISA does not regulate the relationship between an ERISA plan and its service provider. This means state law supplies the governing standards for that relationship. The exceptions to this general rule would be if the state law either only applied to

ERISA plans, or if it dictated the reasonableness of the service provider's compensation. As to the former, PCMA tries to argue that because Section 4441(c)(2) applies to self-insured employer plans it improperly targets ERISA plans. Yet, PCMA admits Section 4441(c)(2) applies to church and government self-insured employer plans and admits church and government plans are not ERISA plans. As to the latter, there is no allegation in the Amended Complaint that Section 4441(c)(2) defines what constitutes reasonable PBM compensation. Unable to plead facts supporting its preemption theory, PCMA vainly attempts to invoke field preemption and out-of-circuit case law; but both are inconsistent with Supreme Court and Ninth Circuit authority.

Accordingly, the Attorney General respectfully requests the Court dismiss the Amended Complaint.

## BACKGROUND

### I. PBMs and California Law Governing PBMs

#### A. PBM Functions and Controversies Regarding PBMs

Health plans and insurers often contract with PBMs to manage their prescription drug benefit. Cal. Assemb. Floor Analysis, S.B. 41, 4 (Sept. 5, 2025). PBMs process pharmacy claims for reimbursement, negotiate with drug manufacturers regarding rebates for use of their products, create formularies (lists of which drugs are covered and at what level of cost-sharing), and contract with pharmacies to establish networks where patients can fill prescriptions. *Id.* at 4-5. Several PBMs are vertically integrated with pharmacies, insurers, and health care providers. Cal. Assemb. Jud. Comm. B. Analysis, S.B. 41, 12 (July 16, 2025).

In recent years, PBMs' business practices have been subject to criticism. In 2024 and 2025, the Federal Trade Commission issued interim staff reports indicating PBMs (i) developed a compensation scheme creating perverse incentives for drug manufacturers to raise prices, (ii) pocketed much of the rebates they negotiate with drug manufacturers instead of passing them onto payers, (iii) steered

patients toward pharmacies they own, (iv) marked up prices of drugs dispensed by their affiliated pharmacies, and (v) charged clients more for drugs than PBMs paid independent pharmacies. Cal. S. Health Comm. B. Analysis, S.B. 41, 10 (Apr. 21, 2025); Cal. Assemb. Floor Analysis, S.B. 41, 5 (Sept. 5, 2025).

**B. California Law Governing PBMs Prior to June 30, 2025**

Before June 30, 2025, state law required "health care service plans" to require, in any contract with a PBM, the PBM register with the Department of Managed Healthcare (DMHC).[1] Cal. S. Health Comm. B. Analysis, S.B. 41, 1-2 (Apr. 21, 2025) (citing Cal. Health & Safety Code § 1385.004). State law also required PBMs to exercise good faith and fair dealing with health plan clients, required PBMs to notify health plans of conflicts of interest, set rules for PBM audits of pharmacies, set payment thresholds for PBM payments to pharmacies, and required PBMs to provide disclosures regarding drug costs and utilization. *Id.* at 1-3, 17 (citing Cal. Health & Safety Code §§ 1385.004-1385.005, Cal. Bus. & Prof. Code §§ 4430, 4440-41, and A.B. 315 (2017-18).).

**C. Assembly Bill 116 (2025-26), Effective June 30, 2025**

On June 30, 2025, as part of the budget process, Governor Newsom signed Assembly Bill 116 (2025-26). A.B. 116 requires DMHC to develop a licensure process for PBMs. A.B. 116 § 16. A.B. 116 also imposed on those PBMs with clients licensed by DMHC or the CDI "a fiduciary duty to its payer client that includes a duty to be fair and truthful toward the payer, to act in the payer's best interests, and to perform its duties with care, skill, prudence, and diligence." A.B. 116 § 30 (enacting Cal. Health & Safety Code § 1385.0022). A.B. 116 became effective immediately.

---

[1] "Health care service plans" typically are health maintenance organizations (HMOs) and managed care organizations (MCOs). *Rea v. Blue Shield of Cal.*, 226 Cal. App. 4th 1209, 1215 (2014). DMHC regulates HMOs and MCOs; the Department of Insurance (CDI) regulates health insurers. *Id.*

**D. Senate Bill 41 (2025-26), Effective January 1, 2026**

On October 11, 2025, Governor Newsom signed Senate Bill 41 (2025-26). It is a wide-ranging law governing PBM conduct, including PBM compensation, pharmacy interactions, and drug manufacturer contracts. S.B. 41 §§ 1-17.

S.B. 41 also addressed PBM fiduciary duties. S.B. 41 §§ 1, 6. S.B. 41 added a duty to "avoid conflicts of interest" to Health and Safety Code section 1385.0022. Additionally, S.B. 41 added Section 4441(c)(2) to the Business and Professions Code. It states a PBM "has a fiduciary duty to a self-insured employer plan that includes a duty to be fair and truthful toward the client, to act in the client's best interests, to avoid conflicts of interest, and to perform its duties with care, skill, prudence, and diligence." S.B. 41 took effect January 1, 2026.

**II. THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974**

**A. ERISA's Scope and General Provisions**

"ERISA sets out a comprehensive system for the federal regulation of private employee benefit plans, including both pension plans and welfare plans." *D.C. v. Greater Washington Bd. of Trade*, 506 U.S. 125, 127 (1992). ERISA applies to employee benefit plans maintained "by any employer engaged in commerce or in any industry or activity affecting commerce. . . ." 29 U.S.C. § 1003(a)(1).

Some employee plans are exempt from ERISA, including governmental and church plans. *Id.* § 1003(b). A "governmental plan" is a plan "established or maintained for its employees . . . by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." *Id.* § 1002(32). A "church plan" is a "plan established and maintained . . . for its employees (or their beneficiaries) by a church or by a convention or association of churches. . . ." *Id.* § 1002(33)(a).

ERISA imposes duties on ERISA fiduciaries. *Id.* § 1104. ERISA also prohibits ERISA fiduciaries from engaging in "prohibited transactions." *Id.* § 1106(a)(1). A transaction is prohibited if it "constitutes a direct or indirect . . . furnishing of . . .

services . . . between the plan" and a "party in interest" unless "no more than reasonable compensation is paid therefor." *Id.* §§ 1106(a)(1)(C), 1008(b)(2)(A). A person "providing services to such plan" is one example of a "party in interest." *Id.* §§ 1002(14)(B).

### B. Enforcement of ERISA

ERISA provides for civil enforcement. 29 U.S.C. § 1132. Beneficiaries may sue to recover benefits, enforce rights, and clarify rights to future benefits. *Id.* § 1132(a)(1)(B). Beneficiaries, and others, may sue a plan fiduciary for breach of fiduciary duty or for engaging in a prohibited transaction. *Id.* §§ 1132(a)(2), (a)(3).

### C. ERISA Preemption

ERISA contains a preemption provision to ensure ERISA plans and sponsors are subject to a uniform body of benefits law. *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86 (2020).[2] The preemption provision states: ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a).

Although ERISA's preemption clause is broad, it has limitations. Some state laws, such as insurance law, are excepted from preemption. *Id.* § 1144(b)(2)(A). Also, because they are not ERISA plans, state laws' application to governmental and church plans is not subject to preemption. Further, there is typically no preemption of "traditionally state-regulated substantive law in those areas where ERISA has nothing to say." *California Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc.*, 519 U.S. 316, 330 (1997). Thus, state law typically governs the commercial relationship between plans and their third party contractors. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1083 (9th Cir. 2009) (state law claim against

---

[2] Conflict preemption prevents plaintiffs from using state law as an alternative enforcement mechanism to ERISA. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 667 (9th Cir. 2019). PCMA does not assert a conflict preemption theory.

service provider not preempted); *Skilstaf, Inc. v. Adminitron, Inc.*, 66 F. Supp. 2d 1210, 1216 (M.D. Ala. 1999) (plan sponsor's common law fiduciary duty claim against service provider not preempted).

### D. Recent Federal Development

On January 30, 2026, the Department of Labor published a Notice of Proposed Rulemaking (NPRM) regarding PBMs and ERISA. The proposed rule, if adopted, would require PBMs to "disclose information about their compensation" to ERISA plans "for purposes of ERISA's statutory prohibited transaction exemption for services arrangements." Improving Transparency Into Pharmacy Benefit Manager Fee Disclosure, 91 Fed. Reg. 4348, 4348 (Jan. 30, 2026).[3]

## III. Procedural History and the Lawsuit's Allegations

Plaintiff, the Pharmaceutical Care Management Association (PCMA), claims to be a trade association whose "mission is to advance the common interests of PBMs." (ECF 23 ¶13.) Its members are PBMs that administer prescription drug benefits for ERISA and non-ERISA benefit plans. (*Id.* at ¶14); *Rutledge*, 592 U.S. at 89 n.1. PCMA alleges PBMs are typically not ERISA fiduciaries. (*Id.* at ¶5.)

One day after S.B. 41's effective date, PCMA sued to enjoin Section 4441(c)(2). On February 24, 2026, PCMA filed an Amended Complaint. (ECF 23.) PCMA names the California Attorney General, in his official capacity, as a defendant due to his role in enforcing the Unfair Competition Law, Business and Professions Code section 17200. (*Id.* at ¶12).[4] PCMA is not seeking relief regarding

---

[3] In February, the federal government passed the 2026 Consolidated Appropriations Act (CAA), which amends ERISA. PL 119-75, 140 Stat. 173 (Feb. 3, 2026). For plan years starting on or after August 3, 2028, PBMs must report drug spending information; and for their contract to be reasonable under the prohibited transaction restrictions, PBMs must remit 100% of drug rebates. *Id.* at §§ 6701, 6702. Given a law is not in operation before the effective date, the CAA has no effect on this lawsuit. Black's Law Dictionary (12th ed. 2024) (defining"effective").

[4] The Director of the Department of Consumer Affairs was a defendant in the first Complaint. (ECF 1 ¶17.) PCMA stipulated to her dismissal. (ECF 21 at p.3.)

any other aspect of S.B. 41 besides Section 4441(c)(2). Nor is PCMA seeking to enjoin Section 4441(c)(2)'s application with respect to government plans, church plans, or other non-ERISA plans. (*Id.* at ¶9.)

The Amended Complaint asserts a cause of action for ERISA preemption. (ECF 23 ¶¶58-61.) PCMA alleges Section 4441(c)(2) is preempted by ERISA because it "relate[s] to" an ERISA governed plan. (*Id.* at ¶59.) PCMA claims Section 4441(c)(2) "makes an impermissible 'reference to' ERISA plans by imposing fiduciary duties on PBMs 'to a self-insured employer plan.'" (*Id.* at ¶61.) Additionally, PCMA alleges Section 4441(c)(2) "has an impermissible 'connection with'" ERISA plans based on contentions it "(a) intrudes upon an area that ERISA comprehensively occupies and (b) prohibits plan sponsors from structuring their employee benefit plans in a particular manner." (*Id.*)

PCMA seeks declaratory and injunctive relief as applied to ERISA covered plans. (ECF 23 ¶9.)

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a party can move to dismiss for lack of subject matter jurisdiction. Dismissal is required where a plaintiff has not pleaded enough facts establishing standing under Article III of the U.S. Constitution. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016). A Rule 12(b)(1) jurisdictional attack can be facial. A facial attack "accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1056 n.1 (9th Cir. 2023) (cleaned up).

Rule 12(b)(6) requires dismissal when a plaintiff has either failed to present a cognizable legal theory or to allege sufficient facts supporting a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). While a court must accept as true the factual allegations contained in the complaint, it need not accept "labels and conclusions" or "a formulaic recitation of the elements of a cause of

action[.]" *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). A court must disregard unreasonable inferences, unwarranted deductions of fact, and legal characterizations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a court cannot assume the plaintiff can prove facts not alleged in the complaint. *Assoc. Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983).

After accepting the well-pled allegations, a court determines whether a complaint alleges a "plausible" claim to relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

### I. DISMISSAL IS PROPER BECAUSE OF JURISDICTIONAL DEFECTS IN THE AMENDED COMPLAINT

The Amended Complaint should be dismissed due to PCMA's failure to "clearly allege facts demonstrating" each element of Article III standing. *Spokeo*, 578 U.S. at 338 (cleaned up).

For PCMA to have Article III standing, it must allege facts showing one or more of "its members would otherwise have standing to sue in their own right[.]" *Cent. Sierra Env't Res. Ctr. v. Stanislaus Nat'l Forest*, 30 F.4th 929, 937 (9th Cir. 2022) (quotation omitted)).[5] For one of PCMA's members to have standing, the

[5] Associations must also allege "the interests it seeks to protect are germane to the organization's purpose" and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Cent. Sierra Env't Res. Ctr.*, 30 F.4th at 937 (quotation omitted). Courts also consider prudential ripeness. *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007). The Attorney General reserves the right to dispute these factors

(continued…)

member must have (1) suffered an "injury in fact," (2) that is "fairly traceable to the challenged action of the defendant," and (3) that is "likely" to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citation omitted). The "injury in fact" must be "(a) concrete and particularized" and "(b) actual or imminent, not conjectural or hypothetical." *Id*. at 560 (citation omitted). For a future injury, it must be "certainly impending" or there must be a "substantial risk" it will occur. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401, 414 n.5 (2013).

To satisfy Article III, PCMA identifies two categories of injuries its PBM members allegedly have suffered: being subject to a "state regulatory scheme" and the need to "revise their business practices." (ECF 23 ¶¶19, 53-55.) Neither is sufficiently pleaded. Further undercutting Article III standing is the fact that, regardless of the outcome of this lawsuit, PCMA's members must comply with A.B. 116, the unchallenged provisions of S.B. 41, and Section 4441(c)(1) and (d).[6]

### A. PCMA Cannot Establish Injury in Fact Based Solely on Its Members Being Subject to Section 4441(c)(2)

The first defective category of injury PCMA alleges is Section 4441(c)(2)'s imposition of fiduciary duties "not contemplated by ERISA or its implementing

---

later. *See New Hampshire Motor Transp. Ass'n v. Rowe*, 324 F. Supp. 2d 231, 237 (D. Me. 2004) ("[I]f it turns out that by virtue of [plaintiff's] conduct that the Maine Attorney General's discovery is excessively inefficient or hampered, I will reconsider" ruling suit did not require "participation of individual members.").

[6] Courts sometimes reiterate a quote from *Lujan* that if "a plaintiff is an object of the action (or forgone action) at issue," then "there is ordinarily little question" about his/her/its Article III standing. *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 112 (2025) (quoting *Lujan*, 504 U.S. at 561-62). This does not mean that being an object of regulation, alone, satisfies Article III. *Cal. Sea Urchin Comm'n v. Bean*, 883 F.3d 1173, 1181 (9th Cir. 2018). The "object of regulation" question is a threshold inquiry to help inform traditional Article III analysis. Further, as discussed below, this case is not "ordinary."

regulations." (ECF 23 ¶19.) This amounts to an argument PBMs are injured by a purported invasion of a right allegedly protected by federal law.

To plead injury in fact under this theory PCMA must allege its members have (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) "but proscribed by a statute," and (3) "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *X Corp. v. Ellison*, 2025 WL 3459641, at *4, 8-9 (D. Minn. Dec. 2, 2025) (applying *Driehaus* when analyzing standing to bring preemption challenge). PCMA has not satisfied this test.

Comparison of PCMA's allegations to the facts at issue in *Driehaus* and *Babbitt* confirms the Amended Complaint's defects. *Babbitt* involved a challenge to a law governing the election of employee bargaining representatives. 442 U.S. at 292-93. The plaintiffs had standing because "it is clear that [they] desire to engage at least in consumer publicity campaigns *prohibited by the Act*." *Id.* at 303 (emphasis added). *Driehaus* involved a state law prohibiting false speech during an election. 573 U.S. at 151. The plaintiffs had standing because they "pleaded specific statements they intend to make in future election cycles," and the election commission previously *"actually found probable cause to believe that [plaintiff's] speech violated*" the challenged statute. 573 U.S. at 161-64 (emphasis added).

In contrast, here there are no specifics regarding PBMs' conduct that is proscribed by Section 4441(c)(2) nor an intention to engage in such conduct in the future. PCMA merely claims its PBM members are "chilled by the risk that actions taken in accordance with plan instructions and federal regulations could be second-guessed as violating California's fiduciary standards." (ECF 23 ¶54.) But "[m]ere allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010) (cleaned up).

PCMA's standing allegations are akin to those found by other courts to be deficient. For instance, in *Carrico v. City and County of San Francisco*, the Ninth Circuit held an association challenging a rent stabilization ordinance on First Amendment and other grounds failed to plead injury in fact where the complaint did not contain "any description of intended speech or conduct." 656 F.3d 1002, 1007 (9th Cir. 2011). The court stated that without these allegations, it could not perform the required Article III analysis. *Id.* As a result, the court found the plaintiff failed to allege its "members intend to engage in conduct even arguably proscribed by" the challenged city ordinance. *Id.* Likewise, the Eastern District of Washington held an association could not bring a pre-enforcement action to enjoin a state law where it did not describe its members' future conduct. *Nat'l Shooting Sports Found., Inc. v. Ferguson*, 722 F. Supp. 3d 1150, 1158 (E.D. Wash. 2024). The plaintiff relied solely on an allegation its members feared "liability for otherwise lawful conduct." *Id.* This allegation was insufficient because it was not an allegation plaintiffs' members "intend to engage in conduct arguably proscribed" by the challenged law. *Id.* (quoting *Carrico*, 656 F.3d at 1007); *accord Vanness v. Aguilar*, 699 F. Supp. 3d 1076, 1083 (D. Nev. 2023) (plaintiffs lacked standing where "none of the plaintiffs allege an intent or plan to engage in conduct prescribed by the statute"); *City & Cnty. of San Francisco v. Whitaker*, 357 F. Supp. 3d 931, 947 (N.D. Cal. 2018) (similar).

### B. Reactionary Spending By PCMA Members Does Not Satisfy Article III

The second defective category of injury PCMA alleges is the cost of compliance with Section 4441(c)(2). (ECF 23 ¶19.)

Compliance costs may, in some circumstances, provide Article III standing. To satisfy Article III, a plaintiff must allege facts tying its compliance activities to avoiding a statutory violation, such as by alleging modification of a product label or payment of a licensing fee. *Cal. Sea Urchin Comm'n*, 883 F.3d at 1181 (discussing

requirements for pleading compliance costs); *cf. Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 980-81 (9th Cir. 2013) (plaintiff challenging firearms license established standing by alleging desire not to pay for license). A key limitation is a plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 402. "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear." *Id.* at 416. Here, PCMA's alleged compliance-cost theory does not meet constitutional muster.

To start, the theory lacks adequate supporting factual allegations. PCMA alleges PBMs must "revise their business practices with respect to self-insured plans, . . . including how they perform under existing contracts and how they negotiate future contracts." (ECF 23 ¶19.) PCMA also alleges that due to the potential for future lawsuits under Section 4441(c)(2) (*id.* ¶¶6, ¶53), its members must "adjust their compliance, oversight, and documentation protocols to defend against fiduciary-duty claims under state law" and "pay for additional liability insurance." (*Id.* at ¶54.) But missing from the Amended Complaint are facts regarding PBMs' business practices prior to Section 4441(c)(2)'s effective date and specifics regarding potential future practices. Without such facts, PCMA's conclusion its practices must change is "overly speculative." *Whitaker*, 357 F. Supp. 3d at 950; *Mehr v. Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1057-58 (N.D. Cal. 2015) ("speculative and nebulous" allegations of injury are insufficient to satisfy Article III).[7]

[7] To the extent PCMA is basing its standing on potential future lawsuits by ERISA plans against PBMs, such a theory fails because the plans are not parties to this suit. *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023) (redressability lacking where nonparties caused injuries caused); *Clapper*, 568 U.S. at 410-11 (traceability lacking when injuries based on "contingencies").

Regardless, PCMA does not claim Section 4441(c)(2) requires PBMs to change their contracts, contract performance, or liability insurance.[8] Consequently, PBMs' purported compliance costs amount only to a self-inflicted injury that cannot support Article III standing. *See Int'l Partners for Ethical Care Inc v. Ferguson*, 146 F.4th 841, 849 (9th Cir. 2025) (Article III standing lacking where injuries "are self-inflicted because they are the result of voluntary actions that Plaintiffs have taken in response to the Statutes—not because of any actual requirement that the Statutes impose") (cleaned up).

PCMA's theory of standing is like Washington State's defective standing assertions in a case seeking to enjoin a revision to a rule implementing the Affordable Care Act. *Washington v. Dep't of Health & Hum. Servs.*, 482 F. Supp. 3d 1104 (W.D. Wash. 2020). In that matter, Washington argued it had standing because it would incur administrative costs "to revise agency policies, websites, and materials[.]" *Id.* at 1118 (cleaned up). The district court held the incurred costs did not demonstrate Article III standing:

> The problem with Washington's [standing] argument is that these administrative costs are voluntary, "self-inflicted" costs. . . . Although it may well be prudent on Washington's part to incur administrative costs . . .,Washington does not point to any provision in the 2020 Rule that requires Washington to incur those costs[.]

*Id.*

### C. The Existence of Unchallenged Laws Undercuts Article III Standing

An additional factor undermines both of PCMA's theories of injury—regardless of the outcome of this lawsuit, PBMs must comply with A.B. 116, the unchallenged provisions of S.B. 41, and Section 4441(c)(1) and (d).

---

[8] California law prohibits insurance coverage of Attorney General unfair competition actions. Cal. Ins. Code § 533.5.

Courts recognize "[a] plaintiff challenging the validity of a statute cannot establish either causation or redressability where another statute not subject to challenge would continue to effect the same injury." *Orion Wine Imports, LLC v. Applesmith*, 440 F. Supp. 3d 1139, 1146 (E.D. Cal. 2020), *aff'd sub nom. Orion Wine Imports, LLC v. Applesmith*, 837 F. App'x 585 (9th Cir. 2021). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court[.]" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

Because PCMA is not challenging Health and Safety Code section 1385.0022, which imposes similar duties on PBMs outside the ERISA context, that law will remain enforceable regardless of the outcome of this lawsuit. *Compare* Cal. Bus. & Prof Code § 4441(c)(2), *with* Cal. Health & Safety Code § 1385.0022. Likewise, regardless of the outcome of this lawsuit, Section 4441(c)(2) will impose fiduciary duties on PBMs with governmental and church plan clients. Further, PBMs must comply with Section 4441(c)(1) and (d), which require PBMs to "exercise good faith and fair dealing" and notify clients of "conflict[s] of interest."

Nowhere in the Amended Complaint does PCMA acknowledge these other duties. Nowhere does PCMA allege PBMs' business practices for ERISA plans are separate from practices for non-ERISA plans or provide non-conclusory facts regarding how PBMs' practices will change going forward. This undermines PCMA's Article III standing. *See Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 895 (9th Cir. 2007) (company challenging billboard restriction failed to establish redressability where company did not demonstrate its billboard applications complied with other valid billboard restrictions).

## II. Dismissal Is Proper Because the Amended Complaint Does Not State a Claim for ERISA Preemption

Even if the Amended Complaint did not have jurisdictional defects, dismissal would be warranted based on PCMA's failure to allege sufficient facts to support its claim of ERISA preemption.

### A. The Test for ERISA Preemption

The Supreme Court recently addressed whether a state law "relate[s] to" an ERISA plan, and is consequently preempted, in *Rutledge v. PCMA*, 592 U.S. 80.

State laws "relate to" ERISA plans if they have either a "reference to" or a "connection with" ERISA plans. *Id.* at 86 (citation omitted). "A law refers to ERISA if it 'acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation.'" *Id.* at 88 (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319-20 (2016)). A law has an impermissible "connection with" an ERISA plan, if it "'governs a central matter of plan administration or interferes with nationally uniform plan administration.'" *Id.* at 87 (quoting *Gobeille,* 577 U.S. at 320). For instance, a state law has an impermissible "connection with" an ERISA plan if it (1) requires "providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits, [citation], or by binding plan administrators to specific rules for determining beneficiary status," or (2) has an "acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage." *Id.* at 86-87 (cleaned up).

In contrast, "ERISA does not pre-empt state rate regulations that merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage." *Id.* at 88 (citing, e.g., *Dillingham*, 519 U.S. at 332). The rational for this rule is such law's connection to ERISA plans is too "tenuous, remote, or peripheral" to support preemption. *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co*., 514 U.S. 645, 661 (1995) (quoting *Greater Washington*, 506 U.S. at 130 n.1).

### B. PCMA Did Not Allege Sufficient Facts Supporting Its Allegation Section 4441(c)(2) Has "Reference to" ERISA Plans

PCMA makes two assertions regarding the "reference to" prong. PCMA claims "self-insured employer plan" in Section 4441(c)(2) is synonymous with

ERISA plan. (ECF 23 ¶45.) PCMA also it claims that because the Legislature could have targeted drafted Section 4441(c)(2) more narrowly, the law has "no meaningful operation" outside of ERISA plans. (*Id.* at ¶46.) Neither is supportable.

As discussed, church and governmental plans are not ERISA plans. 29 U.S.C. § 1003(b)(1), (2). In turn, California statutory law expressly allows for, and acknowledges the existence of, self-insured governmental plans. Cal. Gov. Code §§ 22850(d), 25263, 53200(a), 53202; Cal. Educ. Code § 17566. The plain text of Section 4441(c)(2), when read in context of California law authorizing self-insured government plans, illustrates Section 4441(c)(2) is not limited to ERISA plans. *See Rea*, 226 Cal. App. 4th at 1224-25 (statutory language is generally most reliable indicator of legislative intent and statutes on same topic must be "harmonized to the extent possible").

Section 4441(c)(2) therefore does not act "immediately and exclusively" upon ERISA plans because it applies to PBMs whose clients are ERISA or non-ERISA plans. Likewise, ERISA plans are not essential to Section 4441(c)(2)'s operation. Section 4441(c)(2) would apply to a PBM whose clients are exempt from ERISA: governmental and church plans.

Section 4441(c)(2) is like the Arkansas PBM law the Supreme Court held did not "refer to" ERISA plans in *Rutledge*. The Arkansas law requires PBMs to "reimburse Arkansas pharmacies at a price equal to or higher than that which the pharmacy paid to buy the drug from a wholesaler." 592 U.S. at 84. The Court held the "refer to" prong was unmet because (1) PBMs have non-ERISA plan clients, and (2) the Arkansas law applies to PBMs whether or not they have ERISA plan clients. *Id.* at 88-89 & n.1.

PCMA's citation to *FMC Corp. v. Holliday*, 498 U.S. 52 (1990) (ECF 23 ¶45) does not save its argument. In 1990, in *FMC*, the Supreme Court held that a state anti-subrogation law had an improper reference to and connection with ERISA plans despite its application to non-ERISA plans. 498 U.S. at 59. However, the

Court subsequently narrowed the test to its now-current form. *PCMA v. Wehbi*, 18 F.4th 956, 969 (8th Cir. 2021) (*Rutledge* narrowed "reference to" prong); *Gobeille,* 577 U.S. at 328-29 (Thomas, J. concurring) (ERISA preemption, in general, narrowed post-*Travelers*); *S. California IBEW-NECA Tr. Funds v. Standard Indus. Elec. Co.*, 247 F.3d 920, 927 (9th Cir. 2001) (similar).[9] PCMA's contention the "reference to" prong is met by a law that also applies to government and church plans is incorrect under the more recent decision of *Rutledge.* 592 U.S. at 88-89; *King Cnty. v. Express Scripts, Inc.*, 2025 WL 1082130, at *8 (W.D. Wash. Apr. 10, 2025) (state law claims against PBMs for role in opioid epidemic did not improperly refer to ERISA plans because, "with or without ERISA-covered plans" action regarding PBMs' work for "government or religious entities" could proceed); *Alaska v. Express Scripts, Inc.*, 2024 WL 2321210, at *9-10 & n. 116 (D. Alaska May 22, 2024) (similar).

### C. PCMA Did Not Allege Sufficient Facts Supporting Its Allegation Section 4441(c)(2) Has an Improper "Connection with" ERISA Plans

PCMA asserts two bases for its claim Section 4441(c)(2) has an improper "connection with" ERISA plans. (ECF 23 ¶¶8, 47-52.) It asserts Section 4441(c)(2) governs a central matter of plan administration and interferes with nationally uniform plan administration. (*Id.* at ¶¶8, 48-50.) It also claims Section 4441(c)(2) dictates plan design. (*Id.* at ¶¶8, 51.) Both bases lack sufficient supporting facts. Additionally, PCMA's last-ditch attempt to rectify its pleading defects by arguing for the application of field preemption principles and an out-of-circuit case should be rejected as inconsistent with Supreme Court and Circuit authority.

[9] Because of this narrowing, the earlier decision of *Greater Washington*, 506 U.S. 125, likewise is inapplicable. *Cal. Hotels & Lodging Ass'n v. City of Oakland*, 393 F. Supp. 3d 817, 829 (N.D. Cal. 2019). Moreover, *Greater Washington* addressed a law mandating the provision of benefits, 506 U.S. at 128, which is not the issue here.

### 1. PCMA Does Not Allege Relevant Facts That Section 4441(c)(2) Impermissibly Affects Plan Administration

The question of whether a state law governs a central (versus noncentral) matter of plan administration or interferes with nationally uniform plan administration (versus a *de minimis* effect) was most recently addressed by the Supreme Court in *Gobeille* and *Rutledge.*

In *Gobeille*, the Court found "reporting, disclosure, and recordkeeping" to be "central to, and an essential part of, the uniform system of plan administration contemplated by ERISA" because ERISA and the Department of Labor impose requirements regarding these topics and a plans' lack of compliance can lead to civil or criminal liability. 577 U.S. at 320-323. It thereafter held a Vermont law requiring entities providing and paying for health care services to report information to a state agency was preempted. *Id.* at 315, 325. It did so on the ground "[p]re-emption is necessary to prevent the States from imposing novel, inconsistent, and burdensome reporting requirements on plans." *Id.* at 323. In contrast, in *Rutledge*, the Court held an Arkansas law governing PBM payments to pharmacies was not preempted because the law would only lead to "potential operational inefficiencies." 592 U.S. at 89. Following *Rutledge*, the Eighth Circuit held a North Dakota law governing PBM conduct lacked a "connection with" ERISA plans because the state law only addressed "noncentral 'matter[s] of plan administration' with *de minimis* economic effects and impact on the uniformity of plan administration." *Wehbi*, 18 F.4th at 968.

In its Amended Complaint, PCMA attempts to shoehorn Section 4441(c)(2) into *Gobeille*. (ECF 23 ¶¶8, 48-50.) PCMA points to ERISA's prohibited transaction restrictions and regulations regarding who is a fiduciary under ERISA and the duties of ERISA fiduciaries. (*Id.*) PCMA's position fails for three reasons.

First, PCMA's reference to ERISA's prohibited transaction restrictions is a red herring. As discussed, state law typically governs the commercial relationship

between an ERISA plan and its service providers. (*Supra* Background § II.C, citing *Paulsen*, 559 F.3d at 1083); *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1031-32 (9th Cir. 2021) (state law claim not preempted because claim did not implicate "relationship between plan and plan member, between plan and employer, between employer and employee") (citing *Paulsen*, 559 F.3d at 1082). ERISA's prohibited transaction restrictions only preempt state law with respect to questions regarding the reasonableness of a contractor's compensation. *Cf. Caring for Montanans*, 915 F.3d at 666-67 (finding of no preemption supported by fact reasonableness of defendant's compensation "is irrelevant to plaintiffs' state-law claims" against "party in interest"); *Abraham v. Norcal Waste Sys., Inc.*, 265 F.3d 811, 821 (9th Cir. 2001) (similar). The Amended Complaint does not claim Section 4441(c)(2) is limited to dictating the reasonableness of PBM compensation.

Second, there are no well pleaded facts in the Amended Complaint that Section 4441(c)(2) affects who is an *ERISA* fiduciary. There are two types of ERISA fiduciary. *Bafford*, 994 F.3d at 1026. The first type is a "named fiduciary," which is a person designated as-such in the document establishing the ERISA plan. 29 U.S.C. § 1102(a)(1). The second type is a "functional fiduciary." *Bafford*, 994 F.3d at 1026. A person is a "functional fiduciary" under ERISA if "he exercises any discretionary authority or discretionary control respecting management of such plan . . . or disposition of its assets" or if "he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i), (iii). The Amended Complaint does not allege facts indicating that due to Section 4441(c)(2) PBMs must become named ERISA fiduciaries or take on functions that convert them into functional ERISA fiduciaries.

Third, unlike in *Gobeille*, there is no assertion ERISA plans must undertake concrete and substantial administrative action due to Section 4441(c)(2). The consequences of Section 4441(c)(2) that PCMA identifies are principally felt by PBMs. But as reflected by *Rutledge*, a law lacks "connection with" ERISA plans if

responsibility of compliance "lies first with the PBM." 592 U.S. at 91; *Wehbi*, 18 F.4th at 968-69 ("connection with" prong was unmet when plan economic effects were *de minimis*). Moreover, these consequences lack sufficient factual detail to be considered well-pleaded under *Iqbal/Twombly*. (*Supra* Argument § I.)

### 2. PCMA Does Not Credibly Allege Section 4441(c)(2) Dictates Plan Benefits or Plan Beneficiary Status

PCMA's allegations that Section 4441(c)(2) improperly dictates plan design, (ECF 23 ¶51) are as deficient as PCMA's allegations regarding plan administration.

PCMA's position regarding plan design is based on the allegation Section 4441(c)(2) dictates "who must be treated as a fiduciary to a self-funded ERISA plan." (ECF 23 ¶¶(8(c), 51.) But as previously discussed, PCMA does not allege Section 4441(c)(2) requires PBMs to become ERISA fiduciaries. (*Supra* Argument § II.C.1.) Further, concerns about plans having to account for state law is insufficient to support preemption because ERISA does not preempt state laws that "merely increase costs or alter incentives[.]" 592 U.S. at 88. Thus, like the law at issue in *Rutledge*, Section 4441(c)(2) does not support preemption because it "does not require plans" to make any specific design decision. *Id.* at 90.

### 3. PCMA Cannot Rely on Field Preemption Principles Or a Pre-*Rutledge* Out-of-Circuit Case to Overcome Its Failure to Allege Plan Administration Facts

Attempting to overcome the lack of relevant well-pleaded facts regarding Section 4441(c)(2)'s effect on plan administration, PCMA argues (1) the "connection with" prong is analyzed using a framework "similar to a field-preemption analysis," and (2) the Court should follow *PCMA v. District of Columbia*, 613 F.3d 179 (D.C. Cir. 2010). (ECF 23 ¶¶29, 50.) Both arguments are inconsistent with *Rutledge* and Ninth Circuit authority.

<u>Field Preemption Framework.</u> The Supreme Court does not describe the "connection with" prong as applying analysis similar to field preemption. The quote

PCMA uses to support its position is from a U.S. Senator during floor debate. (*Id.* ¶25 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983) (quoting 120 Cong. Rec. 29197, 29933 (1974)).) The quote does not reflect the Court adopting a field preemption framework. Additionally, while certain former Justices "indicated a willingness" to apply field preemption principles, that has never been the viewpoint of a majority. *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 980 & n.8 (9th Cir. 2001). In fact, statements in *Rutledge* are inconsistent with field preemption. 592 U.S. at 87 ("[N]ot every state law that affects an ERISA plan or causes some disuniformity in plan administration has an impermissible connection with an ERISA plan."), *id.* at 90 (acknowledging ERISA does not preempt all state laws "that could affect the price or provision of benefits").

*PCMA v. District of Columbia.* In this pre-*Rutledge* case, the D.C. Circuit held the District of Columbia's imposition of fiduciary duties on PBMs was preempted by ERISA. 613 F.3d at 188 (D.C.'s fiduciary law had an impermissible "connection with" ERISA plans because it mandated the terms by which PBMs provided services). In so holding, the D.C. Circuit split from an earlier First Circuit decision. *Id.* at 190 fn. * (recognizing creation of circuit split). The First Circuit previously held Maine's imposition of fiduciary duties on PBMs was not preempted by ERISA. *PCMA v. Rowe*, 429 F.3d 294, 302-04 (1st Cir. 2005) (holding state law that, among other things, placed fiduciary duties on PBMs was not preempted).

The First Circuit decision in *Rowe* is more consistent with the preemption analysis in *Rutledge* than the D.C. decision. This is because the Supreme Court stated ERISA is "primarily concerned with preempting laws that require providers to structure benefit plans in particular ways." 592 U.S. at 86-87. The First Circuit in *Rowe* supported its holding that Maine's law imposing fiduciary duties on PBMs was not preempted because the Maine law left plan administrators "a free hand to structure the plans as they wish in Maine." 429 F.3d at 303.

The First Circuit decision is also aligned with Ninth Circuit precedent. In this circuit, state law governs the commercial relationship between plans and their service providers. *See Paulsen*, 559 F.3d at 1083 (state law claims against service provider not preempted).

### III. Post-Lawsuit Development by the Federal Government Is Irrelevant to This Lawsuit

The NPRM does not affect this lawsuit. An NPRM "creates no legal consequences." *Crow v. United States*, 2025 WL 2777879, at *5 (D. Idaho Sept. 29, 2025). Even if the NPRM becomes a final rule, the Article III analysis would not change. Nor would a final rule change the merits analysis as it only would add prerequisites for PBMs to comply with ERISA's prohibited transaction restrictions; it would not alter central plan administration mandates. *Paulsen* therefore would continue to dictate that state law governs the relationship between plans and service providers. 559 F.3d at 1083.

## CONCLUSION

The Court should dismiss the Amended Complaint.

Dated: March 23, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
NELI PALMA
Senior Assistant Attorney General
EMILIO VARANINI
Supervising Deputy Attorney General

/s/ *Darcie Tilly*
DARCIE TILLY
DANNY LO
SOPHIA TONNU
Deputy Attorney General
*Attorneys for Defendant Rob Bonta, in his official capacity*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Rob Bonta, in his official capacity, certifies that this brief contains 6,997 words, as determined by the Word Count feature of Microsoft 365.

Dated: March 23, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
NELI PALMA
Senior Assistant Attorney General
EMILIO VARANINI
Supervising Deputy Attorney General

/s/ *Darcie Tilly*
DARCIE TILLY
DANNY LO
SOPHIA TONNU
Deputy Attorney General
*Attorneys for Defendant Rob Bonta, in his official capacity*